March 07, 2025

Andrew Flood #34808
Secure Housing Unit (SHU)
Maine State Prison
Warren, Me 04864-4600

## 42 U.S.C. § 1983 Complaint

This is a civil rights action seeking money damages and other relief as determined by the outcome of this case.

March 21, 2019 Andrew Flood, pro-se, the Plaintiff was taken into custody by the City of Calais Police Department.

The arresting officers used excessive force during the arrest. And overreacted by tazing him then utilizing handcuffs as a tool to torture the Plaintiff. Allowing the unlocked handcuffs to tighten from Friday night March 21, 2019 approx- 10:30 PM to March 22, 2019 approx- 7:30 A.M.

Mr. Flood was taken to the hospital because the tazing was severe and injured Mr. Flood.

The officer who sat with Mr. Flood refused to remove the cuffs. Refused to losen the cuffs. And left Mr. Flood to lay strapped down to a gurney screaming for help.

The next morning the officer still refused to losen the cuffs And the technician was forced to xray the Plaintiffs swollen hands with cuffs still on.

Obscuring the view. But showing broken bones.

Plaintiffs arms were both permanently damaged from the severity of the 9½ hour incident.

1

# Compromise Of Integrity (1) of ( )

The one reaccurring theme Plaintiff was told or ran into was a conflict of interest with Drug Treatment Court Clients.

Pretrial criminal clients enjoy freedom and all of their civil rights are not waived as a result of a plea bargain.

As opposed to adult treatment court clients.

Drug treatment court is the alternative to incarceration

These clients plead guilty accept responsibility for their crimes and accept (more or less) community confinement.

Prison at home. They have to sign over even their rights to privacy.

That treatment team is composed of the Judge, the district attorney and the defense attorney.

They work as <u>one</u> to keep the <u>client</u> sober.

Way outside the workings of <u>Criminal Judicial Function</u>

It is the Plaintiffs understanding that the Judicial function takes on more of a big brother function.

The lines are crossed between the offices and that in this regard the Court has ceased to function as a fair and impartial fact finder. Simply their is none.

The drug court client also represents a steady income. As supposedly a criminal client on endless bail. Keep showing up to the "status" hearings that get billed for

6

## Compromise Of Integrity (2) of ( )

Even now the Plaintiff is Pretrial-presentenced and sent to a prison without due process.

Rather than proceed to a Court appearance, they are actively looking for alternative housing for me as Mr Flood does not fit.

Maines Commission on Public Defense Services has failed to provide adequate legal representation of the poor.

And it has lead to a catastrophe in the Judicial System.

The commission has failed to hold its peers up to a reasonable expectation of representation.

The Court appointed counsel has been held to a low bar due to the publics overall consept of how it operates.

Had the public knew Court appointed counsel get payed with their moneys spent on taxation perhaps they would hold them up to a higher bar.

The stigma attached to Indigent representation is that the attorneys donate their time to their "clients".

Therefore there is no public back lash. Or at least their peers seem less likely to push a legitimate bar complaint against a indigent representation.

Not an out of the 6 court appointed attorneys here have done anything unless it came from the opposition.

Court appointed counsel receive a hourly wage and no doubt bill appropriately, and the sheer number of appointments alone provide healthy income. On belief.

Compromise of Integrity ( ) of ( )
They get payed win or lose. Simply put their time in and punch a card. Who cares about the representation of a broke convict complaining about a hefty criminal sentence he plead guilty to.

The Plaintiff who is sitting in prison for almost a year for a shoplifting charge is willing to bet court appointed cases have 95% plus convicted on guilty pleas alone.

In the private sector they wouldn't get payed at all.

Increasing funding will do nothing without accountability.

Their peers need to hold complaints of IAC up to a standard.

It also seems ludicrous to assume a Court or the State can indiscriminately pick and choose who represents whom.

There needs to be oversight. Along with continued education.

Examples of this include:
A. Jeff Toothacker telling Plaintiff Maine has no right to a speedy trial.
B. Mrs. Owens saying her drugcourt appointment was a conflict of interest and she refused to subpeona bodycams.
C. Don Brown having Plaintiffs bail revoked for turning down a guilty plea on 8/16/2022
D. Jacob Ferm refusing to push for trial and refusing to schedule a conference with forensic Office for competency
C. All of them for allowing undue influence of Judge Hunter interupt the bench trial that was set before the Court 2/13/19 or 2/13/20 unsure at this point pre Covid.

There is also the lack of State corrective process in holding these people accountable to their actions/inactions.

7

Compromise of Integrity (3) of (

It would be interesting to find out how much the Plaintiff was billed for all of the "status" hearings he was forced into.

The hearings were all pointless.

Everyone was the same.

Sat for hours then continued, to a future date for no reason.

Not even sure there was an official arraignment.

In so far as showing up week after week for drug court. Federal funding must be substancial.

The only time one of the attorneys spoke was during the May 2024 revocation hearing. Mr. Ferm simply testified against Mr Flood to help revoke his bail. After it was he himself who caused the revocation.

Mr. Flood hopes that this Court can understand his Complaint and correctly interpret his claims. As he is having a hard time himself.

The Defendants are the Washington County Jail staff Jane/John Doe for now. At least until Mr. Flood knows he isn't going back to that county. And Mr. Ferm if this is the proper venue. The Plaintiff filed a rule 80-C in State Court but don't think they will prosecute it.

All of these facts are sworn to under penalty of perjury except as to those Andrew Flood beliefs. March 7, 2025

*Andrew Flood*

9

# Claims

#1 Mr. Flood pro-se was subjected to cruel and unusual punishment over the course of six years.

#2 Intentional infliction of emotional distress.

#3 Retaliated against because he chose to speak out against the Jail and Staff in violation of the 1st Amendment as applied to the State of Maine through the 14th Amendment.

#4 Strip searches and other failures to protect the Plaintiff in his person(s) in violation of the 4th Amendment as applied to the State of Maine through the 14 Amendment.

#5 Failure to comply with various State and Federal Law.

#6 Including the Americans with Disabilities Act for a failure to accommodate and retaliation.

#7 Outright Denial of Medical Treatment for failure to treat Lyme Disease as to expensive and various other complete denial of treatment.

# A stand alone claim for failure to provide a mental health provider. Failure to train/oversee staff receives proper training in how to "react" "respond" and "treat" individuals similarly situated and or as the Plaintiff with serious medical/psychiatric needs.

The Plaintiff has no education in the Law. And although has spent countless hours on his claim understands enough to know to ask for a liberal construction of these claims and or how the facts apply.

Any claims can be expanded on and developed with the record.

## Defendants

Sherriff Don Smith
Washington County Jail officers Jane/John Doe
Jacob Ferm
Medical Department Jane Doe

Plaintiff <u>John Doe</u> as so far as being mentioned along side these claims the Plaintiff does not want his information public. So as for this Court to understand his claims, plaintiff wants to limit his private information from being disclosed.

## Damages

Punitive -
Compensatory -

Attorney fees -
Court Costs -

The Plaintiff wishes as a preliminary matter for Court to order the Washington County Jail to provide Mental Health Treatment. Or at least have someone who can make sure they don't have anyone in that dank. Last summer there were at least two people subjected to the inhumane treatment.

Even though he does not wish to return there the Jail Inmates are in need of help.

March 10, 2025

Andrew Flood #34808
Secure Housing Unit
Maine State Prison
Warren Me 04684-4600

United States District Court District of Maine
42 U.S.C § 1983 Civil Rights Complaint

1. Detail of facts
2. This complaint is filed against Washington County Jail, Sherriff, medical staff, Maine Commission On Public Defender Services.
3. The Plaintiff has claims

4. Plaintiff, Andrew Flood, pro-se, is indigent, not educated in the law and requests a Jury Trial.
5. Mr. Flood will prevail on his claims.
6. Most of the claims will be proven by the record.
8. The Plaintiff was incarcerated in Washington County Jail on 3 seperate occasions, over the last 6 years.
9. This complaint is filed at this time to stay within the statute of limitations running out March 21 2025 on some.
10. During that time he was subjected to discrimination, retaliation and denial of medical/psychiatric treatment.
11. The Defendants interfered with Mr. Floods access to the Courts, privacy and other basic human rights.
12. Intentionally messing with his state of mind.
13. Including a policy andor collaboration to missappropriate federal funding. #
14. The Jail/medical/court have a policy to screen people to mainline a stream of clients for drug court andor the Court. And have set aside due process of the law.
15. This is to benefit both Sherriff and the other staffing in the Court(s) with a steady stream of revenue. At the cost of due process.

[HW] Federal Moneys:

16. They have a custom to go after individuals with a prior record or are institutionalized. Usually with an underlying mental health disorder which will make them easily manipulated.
17. The screening process is simply choose people through certain criteria that will fit in their programs. Such as drug treatment court. Or other Federally funded programs that brings in cash. [HW]
18. Inmate needs are not considered. And even funding for the inmates is missapropriated. Such as the inmate benefit fund.
19. Washington County, Sheriff and staff are discriminatory against individuals with dueldiagnosis of mental health and substance abuse disorders.
20. They flag these people, including the Plaintiff, and make it impossible to get medical help. Or psychiatric treatment.
21. It has been a long standing unwritten rule to label these people as acting or actors who don't need medical help.
22. Then they target people who if you glanced at their past you wouldn't blink at them receiving these lengthy sentences to go through these programs.
23. But now it has created a vaccum that the state can no longer keep up with.
24. The State of Maine has lost control over its penal and judical processes.
25. This targeted screening saves money due to the outright denial of the actual treatment they received funding for.
26. They provide a facade. And the

## Plaintiff's 1st Arrest

27. On March 21 2019 Plaintiff was taken to W.C.J.
28. After being released from the Calais Hospital with broken bones, cuts, bruises and unable to use his hands.
29. Staff refused to treat him, Plaintiff suffered.
30. Plaintiff was assaulted by or at least excessive force was used to bring him into custody.
31. Upon arraignment no lawyer was assigned.
32. The Plaintiff was forced to act as his own attorney.

33. The law library was insufficient, paper, pens short or no supply.
34. No access to the library was given on many occasions.
35. Only one night shift sargent would allow it.
36. Otherwise WCJ retaliates against anyone who is litigious.
37. The inhouse grievance system is literally made unavailable.
38. They, WCJ, harrass, as in the Plaintiff's case people who try to access the law library or act as their own attorney.
39. The pursuit of the inhouse grievance system, if it can be called one, ends up in being shipped out after being penalized.
40. Having to work as his own attorney required extra work.
41. A typewriter and more access to research material should have been provided.
42. The time period March - June 2019 Plaintiff fought with the WCJ Defendants for medical/psychiatric treatment and was denied.
43. The Court did not assign Mr. Flood an attorney until after he filed for a Motion For a Speedy Trial in April 2019.
44. Mrs Owens was the first appointment.
45. Mrs. Owens seemed like a nice person however she did not want to cause a conflict of interest, she said, due to Mr. Flood wanting a jury trial and to produce body cam footage.
46. And withdrew after a few hearings.
47. Jeffrey Toothaker was the second attorney. Who failed to ask for the body camera footage, failed to object to D.A. Toff Toffolon supervising the case as a prior attorney, failed to object to a trial being pushed off the calendar. And changed by the Court as or from a bench trial to a jury trial infront of another Judge who Mr. Flood has a bias against and visa versa. There is a personal conflict of interest between Mr. Flood and Judge Hunter that took place over years in his drug court.
48. Mr. Toothaker failed to inform Mr Flood his bail was revoked by Judge Hunter to reinstate a not guilty by reason of insanity as a bail condition. And was ultimately allowed to withdraw by leave of the Court.

49. Donald Brown was then appointed by the Court.
50. Attorney Brown was very good at being personable. But offered nothing but plea bargains.
51. On August 16-18 2022 attorney Brown pushed a plea bargain on Mr. Flood. Mr. Flood wanted a trial to determine if "I've got a gun" constituted a threat under Maine law and the totality of the situation. And to determine if $800 trip fees were legally a part of property damage in order to elevate the crime to felony(s).
52. Mr. Brown who had a unfortunate personal problem(s) going on. And had lost his liscence to practice law. Was allowed to withdraw from the case but was allowed to be a "ghost" appointment in a rather confusing order.
53. Mr. Flood's bail was revoked due to Mr. Brown not scheduling a evaluation through the Forensic Office.

Second Incarceration

54. Mr. Flood called the Washington County Jail and the County Courthouse to determine case status in August, September, October and was denied access to information. 2022
55. Even the District Attorney's Office could not talk to Mr Flood about his own case because Attorney Brown was still stuck to it.
56. Other times the staff would tell me there was no warrant. One time the Clerk told me the charges were dropped.
57. Despite all of this Mr. Flood upheld his integrity and turned himself in peacefully November 01 2022.
58. Mr. Flood brought an inhaler, suboxone and mental health medications with him.
59. Mr. Flood was placed in the Dry Cell that wasn't meant to house an inmate.
60. There was no running water, no toilet, no bunks and the air was bad.
61. They soon moved in another inmate and double bunked us

[FN] Drug Courts use their attorneys for their criminal clients.

62. The inmate was in drug court on a sanction.
63. Soon the inmate was engaged in verbal conflict with the guard.
64. Later that night Mr. Flood asked for his inhaler and the Sargent refused.
65. All of his medication was not given.
66. The Plaintiff allowed bail around 2 PM Nov 1.
67. 5:01 PM he was informed the Jail forgot to forward the bail contract.
68. And he was told no bail until the next day.
69. Plaintiff was furious. And again asked for his Meds. None were given.
70. The next day the Jail personnel refused to allow Mr. Flood to be released because they wanted a $60 bail bond fee.
71. Despite the Court ordering no cash bail.
72. And the Plaintiff had to stay longer.

73. After Mr. Brown another attorney from Bar Harbor was appointed but Plaintiff only had a couple short conversations with her.
74. She also voiced concerns with her drug court appointment.[FN]

75. Jacob Ferm was next. He was heavily involved in his drug court role. And understands little of the criminal process.
76. The first court appearance was July 2023.
77. Judge Murray ordered Mr Ferm to order a State Forensic Zoom visit.
78. Mr. Ferm mainly looked scared and confused.
79. Returning to court as scheduled November 2023 Ms Murray was upset that the evaluation wasn't done.
80. Mr. Flood was forced to speak on his own behalf and tell the Judge Jacob Ferm failed to schedule it. And that Mr Flood call the Forensic Office three seperate time and tried to schedule the meeting himself.

HNJ July 2 Zoom

81. Justice Murray told Attorney Ferm it was his responsibility to schedule the evaluation and to schedule it over ZOOM due to Mr Flood not having transportation. Nov 2023-Dec

82. April 2024 Mr Flood called attorney Ferm for an update. And Mr. Ferm said he had unfortunately "dropped the ball" and scheduled the meeting in Ellsworth or Augusta.

83. At that point Mr Flood assumed the act of misscheduling was intentional. And no so politely told Mr Ferm to reschedule the dam thing over ZOOM.

Second Arrest 5/17/24

85. The Plaintiff was at home peacefully feeding the chickens May 17 2024. When the Calais Police jumped out of the bushes gun drawn to arrest Mr Flood.

86. Mr. Flood was taken to the County Jail on what the officer said was a probation violation.
87. Mr. Flood was active and engaged in substance abust treatment
88. Mr. Flood was active and engaged in mental health treatment.
89. Mr. Flood was undergoing medical treatment for Lyme disease.
90. Mr. Flood was discontinued off all medication and denied treatment for anything after May 17, 2024.

91. The Plaintiff was served with an Rule 80-D Forced Entry & Detainer summons to appear on or around May 31. 2024.

92. The Sherriff was rude in service of process.
93. At that time Plaintiff was denied access to the Law Library, his room was in a segregation cell no sunlight, and the bulb in the over head light was broken.
94. The Plaintiff called Mr. Ferm multiple times for help on bail. And to determine what he was there for.
95. The Jail refused to allow Mr Flood an alternative phone. And he was forced to use the pay phone.

96. The Plaintiff was also denied addresses or phone numbers by staff. And the local civil helplines were blocked.
97. May 21-22 Mr Flood was finally given a hearing in front of Judge Mitchell over ZOOM. Attorney Ferm was present.
98. There were 5 or 6 other people jam packed in the area.
99. Judge Mitchell asked why the Plaintiff missed the one time Mr. Ferm scheduled the meeting and the Plaintiff told him that he had no ride on such a short notice at the time. And that Judge Murray had specifically ordered Mr Ferm to schedule it over ZOOM.
100. Mr. Ferm then said that he didn't think Evaluations were over ZOOM and only in person.
101. Judge Mitchell order Mr Ferm to reschedule the meeting and for Mr Flood to be held no bail pending outcome and transport to the in person meeting.
102. There is only 21 days for the hearing to take place.
103. Mr Ferm failed to again schedule it. And Mr. Flood was forced to call him from the jail to reschedule it. Again.
104. On July 02 2024 at approximately 8:45 AM Mr Flood was woken up by a guard and taken downstairs.

105. On July 02 2024 at approximately 8:50 AM Mr. Flood calmly refused to undergo his forensic evaluation over ZOOM.

106. Mr. Ferm was allowed to withdraw. Some other guy has been appointed for almost 8 months and done nothing except push Not Guilty by Reason of Temp. Insanity.
107. Mr. Flood is pretrial detainee being held and punished at the Maine State Prison extremely violent Secure Housing Unit.
108. The Plaintiff is not violent and is no danger to anyone.
109. Provocation has been used to try to illicit a anger response from the Plaintiff in order to falsely categorize him as a danger to society.
110. If this situation is not corrected these civil rights will go on being completely trampled on by State actors.

11. Plaintiff has done his best state be concise and short. But these claims are over 6 years and time is running out.
2. Please understand Plaintiff is sick and working under stressful circumstances.

Dry Cell Oct - Nov 2024

13. Plaintiff was placed in the dry cell area for two months and has attached facts (Attached Dry Cell 1-3).

14. Plaintiff cannot get photocopies and copied these by hand and may have mixed copies with originals.

15. The SHU is very different and much more penal that population. No access to typing or computer attached to a printer. Sorry.

All facts are sworn to under penalty of perjury except as to those Plaintiff Andrew Flood believes to be true.
Andrew Flood     March 10 2025
Maine State Prison Warren Me

# Dry Cell 2

Finally the cell was directly in front of the Sargents desk. Intake were they process everyone.

Given the Plaintiff was unable to use the bathroom on his own they left him there in the middle of the floor with no cloths on.

Covered in feces for weeks.

What food the brought was insufficient.

And the Plaintiff was not given proper fluids. Water.

This was purely punitive. And sitting exposed like that is a violation of privacy and cruel and unusual.

Plaintive lost over 100 lbs and was not combative towards staff.

Mr. Flood was left without bedding, clothing or food+water most of the time.

The times he was tazed he does not completely remember. But thinks at least once he was 4 point restraints.

In fact he was physically restrained by hard restraints on no less then 2 occassions while being maced and tazed.

Non of the injuries the Plaintiff sustained during those assaults were treated.

The Plaintiff believes that in November he was severely hurt by a tazing that triggered a seizure.

## Dry Cell 3

The Plaintiff believes two guard were wrestling him down to the floor and deployed the tazer directly to the side of his head.

The Plaintiff remembers being maced after being hog tied with arm and leg restraints. The officer calmly placed the can directly in front of the Plaintiffs face and pushed the button.

The Officer got a thrill out of it. And they both laughed.

The Plaintiff remembers every time he was maced inside that tiny cell the officers outside the cell had to put on protective face masks in order to avoid the pain and harm it caused them just <u>indirect</u> contact.

The Plaintiff is still to scared to say their names.

The Officers it seemed were using my fear of being rear cuffed against me. And would perform cell searches just to rear cuff me. It was very painful.

<u>All</u> of these were present in a complaint filed in this Court Flood v. Ball _____. This also came at the same time Plaintiff was filing BAR complaints agaist Assistant District Attorney Toff Toffolon and his former attorney Mr. Ferm.

Without question punishment for filing grievances. Violation of the 1st - 14th Amendments.

## Dry Cell I

This period of time the Plaintiff believes the jail staff tazed him directly in the temple. And caused memory loss.

The Plaintiff suffered several siezures at the County Jail. No medical help was given after these episodes.

For the months of October and November the Plaintiff was completely disabled.

He was no danger to staff and too weak to hurt himself.

Plaintiff was placed in the small triangular glass bubble, that had a square hole in the floor and no water.

The air was poorly circulated and smelled of mold.

The small cell was not meant for housing inmates. It was to small.

The air was poorly circulated and smelled of mold.

The chemical in the floor drain made the eyes water.

The officers routinely slam the cell door and yell inside the door. The small room amplified every sound.

There was feces and other matter up the walls and on the glass.

Along with mold. Black mold spores actively growing.

The central air system manifold was also covered in mold. And piped in stagnant air.

The Plaintiff was forced to live in this cell for a period of up to 8 weeks.